UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DANIEL LOPEZ,<br><br>                 Petitioner<br><br>    v.<br><br>MATTHEW CATE, Secretary, et al.<br><br>                Respondent | Case No. 09-2718 MMA (JMA)<br><br>**REPORT AND RECOMMENDATION<br>TO DENY HABEAS CORPUS PETITION** |

     Petitioner Jose Daniel Lopez, a state prisoner proceeding pro se, was convicted in California Superior Court of attempted murder (Cal. Penal Code §§ 187, 664 - count 1); robbery (Cal. Penal Code § 211 - count 2) and assault with a deadly weapon (Cal. Penal Code § 245(a)(1) - count 3). The jury found each crime was committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)). The jury also found that Petitioner inflicted great bodily injury in the attempted murder and assault (Cal Penal Code §12022.7(a)). The jury further found Petitioner used a deadly and dangerous weapon in the attempted murder (Cal. Penal Code § 12022(b)(1)) and used a deadly weapon, a knife, in the assault (Cal. Penal Code § 1192.7(c)(23)). [Lodgment 1 at 5-7, 129-133.] The trial court sentenced Petitioner to 21 years in state prison on March 14, 2008. [Lodgment 1 at 101; Lodgment 2 at 457.] The California Court of

/ /

Appeal affirmed the judgment. [Lodgment 6 at 1.] The California Supreme Court denied review. [Lodgment 7.]

Petitioner filed a Petition for Writ of Habeas Corpus (the "Petition") on November 23, 2009. (Doc. No. 1.) Respondent filed an Answer (the "Answer") on April 16, 2010 (Doc. No. 12) and Petitioner filed a Traverse (the "Traverse") on April 22, 2010. (Doc. No. 14.) The Court has reviewed the Petition, Answer, Traverse and all supporting memoranda and lodgments. For the reasons discussed below, the Court RECOMMENDS that the Petition be DENIED.

## **FACTUAL BACKGROUND**

This Court gives deference to state court findings of fact and presumes them to be correct. Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. (28 U.S.C. § 2254(e)(1); *see also* Parke v. Raley, 506 U.S. 20, 35-36 (1992)). The relevant facts of the case are taken from the California Court of Appeal opinion:

> Michele S. was working alone behind the counter of a convenience store in Carlsbad when two juvenile Hispanic males came into the store. The juveniles were wearing mechanic's gloves and hooded sweatshirts with the hoods up. They went directly to the beer cooler and starting [sic] grabbing beer. Michele told the juveniles, "Get away from there. You're not old enough." One of them responded that he had identification.
>
> Michele thought the juveniles would go away. However, the juveniles each took two packs of beer and walked toward the front door. Michele moved over to the front door by her friend, Dave Steinmetz, who had stopped by the store to buy cigarettes. Steinmetz stood close by her to protect her and told her he would play bodyguard for a moment. Around this time, a man, later determined to be Lopez [Petitioner] entered the store. He was wearing military-style dog tags, bright studded-style earrings, a shiny wristwatch, sunglasses, a white T-shirt, and a checkered button-up shirt. He used his bottom to push Michele out of the store and then trapped her between the front door and a trash can while he held the door open for the juveniles.
>
> Steinmetz came to Michele's aid. He pulled her out from behind the door and grabbed both the juveniles by the elbows of their sweatshirts. Lopez hit Steinmetz from the side and stabbed Steinmetz three times: once in his right chest/armpit area, once in his right flank, and once in his right mid-abdomen. Steinmetz let go of the juvenile he held with his right hand. That juvenile and Lopez ran away. The juvenile Steinmetz held with his left hand kept trying to get away. The juvenile turned around and pushed Steinmetz into a car. Steinmetz lost his balance and the juvenile escaped. Michele went back into the store and called 911. Steinmetz walked back into the store, noticed he was bleeding, and realized he had been stabbed. He showed Michele, who asked the 911 operator to send an ambulance. He then went back out

of the store slid down in front of an ice machine, and passed out. A large amount of blood pooled underneath his right armpit and rib area.

All of Steinmetz stab wounds were near major organs. One of the strikes punctured his lung, causing part of it to collapse. Another strike hit his kidney, cutting it 2.5 centimeters. The third strike went over, but missed his liver and spleen. Steinmetz was hospitalized for four days and did not regain his strength for four to six weeks. At the time of trial, he still had nerve damage from one of the wounds. Carlsbad Police Detectives Mark Reyes and Bryan Hargett investigated the incident. During the initial survey of the crime scene, Reyes found a silver wristwatch with a broken clasp on the ground along the route Lopez and the juveniles fled. A San Diego County Sheriff's Department criminalist found Lopez's DNA on the watch. In addition, Oceanside Police Gang Detective John McKean viewed the store's security video and identified Lopez as the stabber based on Lopez's "unique nose" and the earrings he was wearing.

Reyes, Hargett and other members of the Carlsbad Police Department subsequently executed a search warrant at Lopez's home. They found bright white stone studded-style earrings, a multipurpose tool with a blade and other implements, two metallic men's watches, and three button-up shirts similar to the one Lopez wore on the night of the incident. They also found items with writing associated with Oceanside's Varrio Mesa Locos street gang. They subsequently learned the two juveniles with Lopez on the night of the incident were members of Varrio Mesa Locos. Lopez had previously been contacted by police while in the company of the brother of one of the juveniles and had previously been stopped in a vehicle registered to the mother of the juvenile.

Hargett, the Carlsbad Police Department's gang detective, testified the convenience store is located within the turf of Varrio Carlsbad Locos, a Hispanic street gang. Hargett also testified Hispanic street gangs value "respect," which they obtain by fear and intimidation tactics. Varrio Carlsbad Locos gang members tolerate the presence of Varrio Mesa Locos gang members within their turf because a member of Varrio Mesa Locos is dating the sister of an associate of Varrio Carlsbad Locos. In addition, by aligning with one another, the two gangs engender more fear and, therefore, more "respect."

McKean confirmed an alliance exists between the Varrio Carlsbad Locos and Varrio Mesa Locos gangs. He testified Varrio Mesa Locos is a multi-generational Hispanic street gang whose turf is located in the Mesa Margarita area of Oceanside near the back gate of Camp Pendleton. He testified that younger gang members are required to "put in work" for the gang by doing such things as tagging, fighting other gang members, committing robberies, selling drugs, or carrying drugs from one place to another. The "work" is often verified by older gang members who monitor the younger gang member's activities. As the seriousness and violence of the younger gang member's crimes increase, the more respect they garner inside and outside of the gang.

McKean further testified that a "beer run," where a minor walks into a store, grabs beer, and runs out of the store, is not a crime exclusive to gang members. However, it, along with other types of lower level thefts, is considered a starter crime for younger gang members. Like other "work" done by younger gang members, older gang members will supervise beer runs. If something goes wrong with a beer run, an older gang member supervising the beer run would be expected to assist or risk retaliation from the gang.

3

In addition, McKean testified that, while Varrio Mesa Locos gang members engage in social activities, this is not the gang's primary function. Rather, the gang's primary function is to commit crimes such as murders, robberies, carjacking, assaults, auto theft, and identity theft. He also testified about predicate offenses committed by Varrio Mesa Locos gang members, including murder, attempted murder and shooting at an occupied vehicle.

McKean opined that Lopez is a member of Varrio Mesa Locos because he met several Department of Justice criteria for documenting gang membership, including admitting that he belonged to the gang. After being asked to assume the key facts, McKean also opined the crimes in this case were committed for the benefit of, at the direction of, or in association with the Varrio Mesa Locos gang. He explained that having two younger gang members shoplift beer while a more senior gang member supervises or assists is consistent with the requirement for younger gang members to "put in work" to benefit the gang. He also explained the crime increased the status of the gang and each of the participants. Specifically, engaging in criminal activity in another gang's territory increased the status of the gang, stealing the beer increased the status of the younger gang members, and the violent attack increased the status of the senior gang member.

[Lodgment 6 at 2-6, *internal footnotes omitted*].

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C.A. § 2244, applies to all federal habeas petitions filed after April 24, 1996. *Woodford v. Garceau*, 538 U.S. 202, 204 (2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). The AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a); see also *Reed v. Farley*, 512 U.S. 339, 347 (1994); *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991). Because this Petition was filed on June 29, 2009, the AEDPA applies to this case. See *Woodford*, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of habeas corpus." *Moore v. Calderon*, 108 F.3d 261, 263 (9th Cir. 1997). Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

4

>determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must allege that the state court violated his federal constitutional rights. *Hernandez*, 930 F.2d at 719; *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990); *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); *Jackson*, 921 F.2d at 885 (explaining that federal courts have no authority to review a state's application of its law). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to level of a constitutional violation).

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the U.S. Supreme Court stated that the "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 71 (citation omitted). In other words, a federal court is not required to review the state court decision de novo. *Id.* Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1). *Id.*

/ /

The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, as determined by the Supreme Court of the United States.'" *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997) (emphasis added). Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." *Id.* "[A] state court decision may not be overturned on habeas corpus review, for example, because of a conflict with Ninth Circuit-based law." *Moore*, 108 F.3d at 264. "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." *Id.*; *see also Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996); *Childress v. Johnson*, 103 F.3d 1221, 1225 (5th Cir. 1997); *Devin v. DeTella*, 101 F.3d 1206, 1208 (7th Cir. 1996). Furthermore, with respect to the factual findings of the trial court, the AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e).

## ANALYSIS

Petitioner states three grounds for habeas relief. First, Petitioner contends the evidence presented at trial was insufficient to support his conviction for attempted murder. Second, Petitioner contends the evidence presented at trial was insufficient to support the jury's findings that the three crimes of conviction were committed for the benefit of a criminal street gang. Third, Petitioner contends the trial judge's denial of a 30-day continuance of the sentencing hearing violated his Sixth Amendment right to counsel and his due process right to a fair sentence. Respondent contends the California courts' resolution of the claims was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Respondent further contends the California courts' resolution of the claims did not result in an unreasonable determination of the facts based on the evidence before the California courts. (28

1  U.S.C. § 22554(d)).  Respondent contends that all of Petitioner's claims are therefore
2  without merit and must be denied.
3  **Ground One: Sufficiency of Evidence to Support Attempted Murder Conviction**
4  Respondent contends the jury was "amply justified in concluding that Petitioner
5  intended to kill ... when he repeatedly stabbed [the victim] in the area of vital organs."
6  [Doc. 12 -1 at 9.]  Clearly established federal law regarding sufficiency of the evidence
7  is set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  That court held "the
8  relevant question is whether, after viewing the evidence in the light most favorable to
9  the prosecution, any rational trier of fact could have found the essential elements of the
10 crime beyond a reasonable doubt."  *Id.*  "Put another way, the dispositive question
11 under *Jackson* is 'whether the record evidence could reasonably support a finding of
12 guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982-83 (9th Cir.
13 2004) (*en banc*) (quoting *Jackson*).
14 The *Jackson* standard "must be applied with explicit reference to the substantive
15 elements of the criminal offense as defined by state law."  *Id.* at 983.  The jury in
16 Petitioner's case was instructed under California law that Petitioner could be found guilty
17 of attempted murder if he "took at least one direct but ineffective step toward killing" and
18 "intended to kill that person."  (Lodgment 2 at 362; CALCRIM No. 600, Attempted
19 Murder).
20 The California Court of Appeal rejected Petitioner's claim that there was
21 insufficient evidence to support his conviction for attempted murder, holding, "[a] jury
22 may infer a defendant's intent to kill from the defendant's purposeful use of a lethal
23 weapon in a manner that could inflict a mortal wound had the weapon been on target."
24 [Doc. 12 -1 at 9.]  [Lodgment 6 at 9.] More specifically, the California Court of Appeal
25 rejected Petitioner's claim that the evidence only showed that by stabbing the victim
26 repeatedly in the area of vital organs Petitioner intended merely to "assist the juveniles
27 in escaping from [the victim's] grasp."  [Doc. No. 1 at 6.]  That court held such intent
28 does not preclude an intent to kill when a defendant used a lethal weapon with lethal

7

1 force, "even if the defendant used the lethal weapon without advance consideration and
2 only to eliminate a momentary obstacle or annoyance." [Lodgment 6 at 9.]
3    This Court finds under the *Jackson* standard that the record evidence reasonably
4 supports a finding of guilt of attempted murder beyond a reasonable doubt.  This Court
5 therefore RECOMMENDS that Ground One of Petitioner's Petition be DENIED.

**Ground Two: Sufficiency of Evidence To Support Gang Enhancement Findings**

   Respondent contends substantial evidence supported the gang enhancement findings for all three of Petitioner's convictions. [Doc. No. 12-1 at 10]  Petitioner contends "[t]he prosecution presented no solid or credible evidence this crime was gang-related..." [Doc. No. 1 at 7.]  To establish a criminal gang enhancement allegation under California law "the prosecution must prove that the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.  The prosecution may meet this burden by presenting testimony from a gang expert.'" [Lodgment 6 at 9; *People v. Gardeley*, 14 Cal. 4th 605, 616-620 (1996).]

   Under AEDPA, this court shall not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court if the decision was based on a reasonable determination of facts in light of the evidence presented in the state court proceeding.  (28 U.S.C.A. § 2254(d).  The California Court of Appeal held the evidence presented in the state court proceedings, including the gang expert's testimony, showed the following: Petitioner was a gang member and committed the charged crimes with juvenile members of the same gang for the benefit of the gang.  [Doc. No. 12-1 at 10.]  That court additionally held the evidence on record showed Petitioner actively helped the juvenile gang members by stabbing the victim.  *Id.*  After examining the evidence on record, the California Court of Appeal concluded "there is sufficient evidence to support the jury's true findings on the criminal street gang enhancement allegations." [Lodgment 6 at 10.]

8

As the California Court of Appeal's decision was based on a reasonable determination of facts in light of the evidence presented in the court proceedings, this Court RECOMMENDS that Ground Two of Petitioner's Petition be DENIED.

**Ground Three: Denial of Continuance at Sentencing Hearing**

Respondent contends Petitioner's third ground for habeas relief should be summarily rejected because it fails to provide a federal question or any basis for federal habeas relief. Petitioner claims his Sixth Amendment right to counsel and due process rights under the United States Constitution were violated when the trial court refused to grant him a 30-day continuance of the sentencing hearing. "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel... Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); see also *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel"). Even if a request for continuance is improperly denied, habeas relief is not available unless there is a showing of actual prejudice to petitioner's defense resulting from the refusal to grant a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997).

In considering whether the denial of a continuance implicating a defendant's right to counsel is an abuse of discretion, the Ninth Circuit has applied these factors: (1) whether the continuance would inconvenience witnesses, the court, counsel, or the litigants; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5)

9

whether a denial would prejudice the defendant. *See United States v. Mejia*, 69 F.3d 309, 314 n. 5 (9th Cir. 1995); *see also* United *States v. Garrett*, 179 F.3d 1143, 1145-47 (9th Cir. 1999) (en banc). A trial court requires "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Miller v. Blacketter*, 525 F.3d 890 895 (9th Cir. 2008).

The application of the factors identified by the Ninth Circuit to Petitioner's claim leads to the conclusion that this decision was not contrary to or an unreasonable application of U.S. Supreme Court precedent. On January 30, 2008, the day Petitioner was convicted, the trial court granted Petitioner's request to delay sentencing until March 14, 2008. [Lodgment 2 at 444-445.] On March 14, 2008, Petitioner asked for a 30-day continuance to address the possibility he might have mental health problems. [Lodgment 6 at 12; Doc. No. 12-1 at 13.] Defense counsel did not give prior notice about the proposed continuance. [Lodgment 2 at 446.] Petitioner reportedly told his defense counsel the night before the hearing he had been seeing not a psychologist or psychiatrist, but a "psych tech." [Lodgment 2 at 448.].

Defense counsel asked for additional time to "see what was done and what was said at the time." [*Id.*] The prosecutor opposed the continuance, pointing out the record was void of any evidence of mental defect. [Lodgment 2 at 446-447.] In fact, Petitioner's own statement recorded in his Probation Report as regards mental illness was that "he was examined once at Juvenile Hall and there was no evidence [of mental illness] whatsoever." [Lodgment 2 at 447.] Neither Petitioner nor his counsel disputed the Probation Officer's Report that the "defendant is in 'good health' and was last seen by a psychologist in Juvenile Hall, however, there was no diagnosis." [Lodgment 1 at 95-J.] The trial judge denied the requested continuance, and the California Court of Appeal upheld the decision, holding that "at most, the record suggests there was a possibility [Petitioner] might have mental health problems. Such speculation is insufficient to establish a continuance would have been useful." [Lodgment 6 at 11-12.]

/ /

10

In reviewing the totality of circumstances, it is evident this was not a case of a trial judge with a "myopic insistence upon expeditiousness in the face of a justifiable request for delay." *Ungar*, 376 U.S. at 589. The trial court could have reasonably determined a continuance was unmerited because of the lack of any evidence of mental health defects on record, and based upon Petitioner's own statements he was in good health and had no history of mental illness. The Court, therefore, agrees with the California Court of Appeal's decision that the trial court did not abuse its discretion in denying the continuance.

Even if the continuance was improperly denied, Petitioner fails to show any actual prejudice resulting from the trial court's decision. "Actual prejudice" is demonstrated if the error in question had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Petitioner's verdict was already decided, and in denying the continuance, the trial judge stated, "I really am unable to see how there's going to be any type of mental health issues that is going to assist the court in ...deciding what sentence is appropriate." [Lodgment 2 at 448.] Petitioner was represented by counsel, and failed to show that the results of his trial or sentencing would be different had the continuance been granted. Petitioner therefore has not shown there was a due process violation or a violation of his Sixth Amendment right to counsel. The Court therefore RECOMMENDS Ground Three of Petitioner's Petition be DENIED.

## CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice and that judgment be entered accordingly.

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

//

11

1 **IT IS ORDERED** that no later than **January 3, 2011**, any party may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be served and filed no later than **January 13, 2011**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 148 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: December 13, 2010

Jan M. Adler
U.S. Magistrate Judge

12